**Henry J. COPE, Plaintiff,**

v.

**M. Peter McPHERSON, Administrator, Agency for International Development, Defendant.**

**Civ. A. No. 83–3064.**

United States District Court, District of Columbia.

July 10, 1984.

Joel D. Joseph, Washington, D.C., for plaintiff.

Robert C. Seldon, Asst. U.S. Atty., Washington, D.C., for defendant.

### MEMORANDUM

GESELL, District Judge.

This is a claim by a long-time, responsible employee of the Agency for International Development (AID) that he has continuously been denied promotion since prior to 1976 by reason of his age.[1] The record of a full bench trial has now been briefed and the Court here enters its findings of fact and conclusions of law.

Plaintiff is a white male now 59 years old. He was last promoted in 1968. After various tours of foreign duty he has worked in Washington, D.C. since 1973 as a specialist in development of labor organization training programs for developing countries. He is ranked FS-2, a Foreign Service officer grade which carries a maximum salary of $60,000, a rank only slightly below the rank held by the most senior Foreign Service employees of AID.

Based on recommendations of his supervisors and a review of his personnel file plaintiff was found qualified for promotion by selection board panels in 1976, 1978 and 1980,[2] after review and rating in accord with the Foreign Service Promotion System established by the Foreign Service Act of 1980, 22 U.S.C. § 3901 *et seq.* In each instance, however, his ranking among those found qualified for promotion was not sufficiently high for him to be chosen for one of the limited number of promotions given. Plaintiff filed his initial administrative complaint alleging age discrimination in 1977. This complaint was finally denied in 1983, leading to the present action.

Plaintiff presented no proof to show that his qualifications were superior to those of others younger than himself who were promoted to FS-1. Rather, he asserts that the promotion system inherently discriminates against older employees and that he has been a victim of the process. He bases this claim primarily on a statistical analysis of past promotions and upon the fact that time-in-service, *i.e.*, seniority, is not explicitly taken into account when selections are made for promotions among those found qualified for promotion and ranked by the selection panels.

The elements of proof and burdens of production and proof for a claim under the ADEA are well established. Plaintiff has the initial burden of showing a *prima facie* case of discrimination by a preponderance of the evidence.

> To make out a prima facie case of age discrimination against either government or private employers, a plaintiff must demonstrate facts sufficient to create a reasonable inference that age discrimination was "a determining factor" in the employment decision. Such an inference is created if the plaintiff shows that he (1) belongs to the statutorily protected age group (40–70), (2) was qualified for the [promotion], (3) was not [promoted], and (4) was disadvantaged in favor of a younger person.

*Cuddy v. Carmen,* 694 F.2d 853, 857 (D.C. Cir.1982).

---

1. Plaintiff's claims are brought under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*

2. He was found not qualified in 1977, 1979, 1981, 1982 and 1983.

■ There is no dispute that plaintiff is a member of the protected class, was qualified for promotion in the years 1976, 1978, and 1980, and was not promoted.[3] In determining whether plaintiff has presented a *prima facie* case, then, the Court must consider whether he has presented evidence sufficient to create a reasonable inference that he "was disadvantaged in favor of a younger person."

In addition to plaintiff's attack on the promotion system, he called the Court's attention to a statement by a former AID Administrator named Gilligan before a congressional committee who indicated his belief there were too many over-aged, overpaid employees at AID. Evidence was also presented establishing that plaintiff is and has been a steady, competent and in all respects satisfactory employee over his long tenure with the agency. Thus viewing the proof in the light most favorable to his cause plaintiff established by a preponderance of the evidence a sufficient but thin *prima facie* case.

Once a *prima facie* case has been established, the burden falls on the employer to produce credible evidence tending to show that the employee was denied promotion for a legitimate, nondiscriminatory reason. If the employer does so, the employee then must show by a preponderance of the evidence that the proffered reason for plaintiff's non-promotion is merely pretextual, and that age was in fact "a determining factor" in the employer's decision. *Id.*

As the following analysis of the entire record clearly establishes, credible evidence offered by AID amply established legitimate nondiscriminatory reasons for plaintiff's nonpromotion and the record is devoid of proof that age played any part in the nonpromotion decisions plaintiff challenges.

Defendant presented a full explanation of the system which governed possible promotion of employees such as plaintiff who carry Foreign Service rank. These employees are reviewed annually for promotion eligibility by impartial panels which, at the conclusion of their analysis, rank qualified employees to reflect relative overall qualification for advancement. The panels are guided by detailed written precepts carefully developed by the AID personnel office in consultation with employee representatives.

No employee is interviewed by the panel, which acts solely on the basis of the employee's written personnel record. Employees being considered are generally not personally known to panel members. A written submission recommending promotion is initially prepared by an employee's supervisor, reviewed by a higher supervisor, shown to and commented on by the employee, and then submitted to the promotion panel along with the employee's entire personnel folder for appraisal.[4] Members of the three-member panels considering promotion to FS-1 are at least themselves in the FS-1 grade. All employees recommended for promotion by their supervisors are considered, and those found qualified for promotion by the promotion panel itself are then ranked in declining order of qualification.

The number of promotions available is determined independently of this process, based on budgetary restraints and program needs.[5] The number of employees actually promoted in the various job categories is usually less than the number found quali-

---

3. Plaintiff does not challenge the decisions of the promotion panels in 1977, 1981, 1982, and 1983 that he was not qualified for promotion; only their failure to rank him high enough in 1976, 1978, and 1980 to actually be promoted is at issue.

4. While the immediate supervisor's recommendation for promotion initiates the process, it is given little weight by panels because of the number of recommendations suggesting unusually high performance. In 1981, 60 percent were rated outstanding by their supervisors, the highest recommendation, and 33 percent were rated superior, the next highest recommendation. The lack of qualitative appraisal is thus apparent. More searching analysis for promotion occurs through the panel process.

5. No proof was introduced which would suggest that this decision is in any way related to employees' ages.

fied. In the years that plaintiff was found qualified for promotion the panel rated him below the number actually selected for promotion. In all instances those promoted ranked higher than plaintiff. In 1976 plaintiff ranked fifth and four were chosen. In 1978 plaintiff ranked 60th and 13 were chosen. In 1980 plaintiff ranked 42nd and 31 were chosen.

Panels change each year. Several panels are chosen each year to consider different categories of promotions. The panel considering those seeking advancement from FS–2 to FS–1 will typically review up to 250 files over a six-week period. They act entirely on the basis of the files before them. When the ratings are announced all employees are notified as to whether or not they were found qualified and where they rank.

■ Plaintiff makes much of the fact that selections for promotion from FS–2 to FS–1 were made without regard to seniority. While courts have held that discrimination *against* someone based on seniority constitutes age discrimination[6] it does not follow that failure to give employees explicit "credit" for seniority does also. On its face such a policy is wholly age-neutral, and plaintiff has failed to show how it in any way works to the disadvantage of older workers.

Plaintiff's real argument is that "[i]t is unreasonable not to give credit for experience. Experience is one of those areas [in] which the older employees have the advantage, albeit a fair advantage, over younger employees."[7] Failure to give *explicit* credit for seniority or experience, however, does not mean that this experience does not work to the advantage of the older employees. An employee's experience may help him to perform his work more efficiently and hence receive higher marks from his superiors, and this would improve his chances for promotion. The same may be said for the variety and nature of assignments experienced over his career. Plain-

tiff's suggestion that AID "ignores" experience in promotion decisions is thus not entirely correct, and his suggestion that its failure to give explicit recognition to seniority in making promotions constitutes age discrimination must be rejected.

■ Much of the proof involved statistical analysis of promotion results in an attempt to prove or disprove an age bias from promotion results. Defendant's expert enabled the Court to weigh the significance of plaintiff's expert testimony. On all the expert testimony the Court finds none of plaintiff's expert testimony significant. Plaintiff's expert noted only one year where there was disparity sufficient to suggest age discrimination, the year 1981, a year when plaintiff was not recommended for promotion and 12 candidates age 50 and older were rated above him. This one aberration has no statistical significance.

Moreover, the entire analysis by plaintiff's expert appeared flawed when it was shown that, while those whose performance has not been sufficiently outstanding to result in their promotion remained in the statistical pool, their age peers who were promoted were removed from the pool and replaced by younger employees just promoted to FS–2. Among older workers, therefore, those on the average less qualified will remain in the pool, and as a result the pool can be expected to be "weighted" with more relatively older, less qualified employees. One would thus expect to see some disparity by simply comparing age levels with the pool with the promotion rates. This statistical phenomenon, unique to an age discrimination analysis of the system, was completely ignored by plaintiff's expert.

There was no acceptable proof of age discrimination in the statistics which, if anything, as defendant's more knowledge-

---

6. *See, e.g., Geller v. Markham,* 635 F.2d 1027 (2d Cir.1980).

7. Plaintiff's Post-Trial Brief, at 15.

able expert showed, suggested the objectivity and neutrality of the system.[8]

 Other evidence presented by plaintiff did not establish that the system operated in a discriminatory manner as to age.

(1) In 1976 plaintiff was found qualified for promotion but ranked fourth and only three in his job category were promoted. Plaintiff contends that there must have been a clerical error that denied him promotion in 1976. Such a clerical error if it occurred, and there is no proof that such was the case, did not, of course, establish age discrimination.

(2) As to Administrator Gilligan's comments, credible evidence offered by defendant established that these comments were considered wholly out of place by those in the agency concerned with personnel matters and were simply ignored by the agency's management.

(3) Plaintiff also urges that because an early preliminary investigative paper relating to the 1976 promotion decision is missing from his file, age discrimination should be inferred. The proof does not permit this inference. The missing paper could not have been of any consequence. Moreover, there is nothing to suggest that the loss of this preliminary report was anything but accidental.

(4) Because the individual informal notes of panel members made during the selection process have not been placed in the promotion files or otherwise preserved, plaintiff contends his due process rights have been destroyed because he cannot demonstrate that the panel rankings were pretextual. No particular type of notekeeping is required. Indeed, notes are not required. The notes are not prepared for panel use. These individual "records" are purely personal. Destruction of such "records" is routinely done at the end of the panel session. Plaintiff's promotion was not handled any differently than all other promotions. In short, plaintiff cannot claim any benefit simply because these rough notes were routinely discarded. See *Valentino v. United States Postal Service,* 674 F.2d 56, 73 n. 31 (D.C.Cir.1982).

(5) Another of plaintiff's contentions is that defendant's failure to call as witnesses panel members who reviewed him for promotion should raise an inference of discrimination. One experienced panel member of great credibility did appear to explain procedures in detail. As his testimony indicated, the large number of employees examined by the panel make it impossible to remember individual files. In any event, plaintiff's attack is leveled at the system, not to a decision as between himself and another. The panel witness established a clear pattern of scrupulous attention to statutory promotion requirements, objectivity and impartiality.

(6) Finally, plaintiff suggests that AID's concern for minorities and women results in discrimination against older employees. This concern is limited to giving advantage to minorities or women only in the event of a "tie." Persons over 40 apparently were not specifically given this advantage. But there is no proof of any tie and indeed plaintiff was not found ineligible due to a tie.

None of these contentions establishes any intent or motive to discriminate against older employees, or any discriminatory practice. Plaintiff continues to believe his merits have been overlooked in promotion decisions, but the record fails to support his claim of age discrimination or reprisal.[9]

Plaintiff naturally feels that the AID promotion system is impersonal, not geared to recognize his special talents, and believes his failure to be promoted somehow deprecates his public service. The promotion system is neutral and objective. It is perhaps far from perfect but there is no proof of age bias, and probably no foolproof promotion system can be devised.

---

8. Small sample size, however, made it difficult to draw any meaningful conclusions from the statistical analyses presented.

9. Plaintiff claimed reprisal in 1981 based on alleged delay in processing his 1977 complaint but no proof was offered.

Plaintiff is a competent, useful public servant with demonstrated ability in his specialized field. He does not aspire to enlarged responsibilities but hopes to serve out his career in his present area of work. He would like more pay as recognition of his long service, but there is nothing in his record that specially warrants his selection to FS–1 over others. This is a rank of major responsibility intended for officials usually charged with broad administrative duties of a policy-forming nature. These jobs are often filled by individuals over 40. Plaintiff has simply failed to satisfy the highly selective requirements of such a post.

Plaintiff has failed to establish age discrimination. Defendant has presented credible evidence that plaintiff's failure to be promoted was not based on age, and plaintiff has failed to carry his ultimate burden of proving age discrimination. Accordingly, the Clerk of Court is directed to enter judgment for defendant.